FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★   JUN 17 2005   ★
P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
ANTHONY PIPOLA,

          Petitioner,                    97 CV 4988 (SJ)

  - against-                                MEMORANDUM
                                          AND ORDER

UNITED STATES OF AMERICA,
                Respondent.
------------------------------------------------------X
APPEARANCES:

LINDA S. SHEFFIELD
2026 North Decatur Road, N.E.
Atlanta, GA 30307
Attorney for Petitioner

UNITED STATES ATTORNEY'S OFFICE
Eastern District of New York
One Pierrepont Plaza
Brooklyn, New York 11201
Attorneys for Respondent


JOHNSON, Senior District Judge:

       Petitioner Anthony Pipola ("Petitioner") brings this motion for reconsideration pursuant to Federal Rule of Civil Procedure 60(b). For the reasons stated herein, Petitioner's motion is DENIED.

## BACKGROUND

       Petitioner was convicted on May 4, 1995, following a jury trial, of robbery conspiracy to obstruct commerce in violation of the Hobbs Act, 18 U.S.C. § 1951(a);

1

two counts of aiding and abetting obstruction of commerce by means of robbery in violation of 18 U.S.C. §§ 2(a), 1951(a); and two counts of aiding and abetting use or carrying of firearm during crime of violence in violation of 18 U.S.C. §§ 2(a), 924(c)(1). United States v. Pipola, 83 F.3d 556 (2d Cir. 1996).

The charges against Petitioner arose in connection with two armed robberies during which cash and checks were taken from employees of Anchor Armored Delivery, Inc. ("Anchor"). The robberies took place outside the Dubovsky & Sons warehouse ("Dubovsky") and at a Citibank branch, both located in Queens, New York. Id. In the Citibank robbery, Anchor was delivering money from Caldwell Farms ("Caldwell"), an Anchor customer, to the bank. (Resp. App. Br., 1995 WL 17202813, at *5.)

Petitioner was sentenced to concurrent 97-month prison sentences for the robbery and conspiracy counts and consecutive terms of 60 months and 240 months for each of the firearms charges, for a total term of imprisonment of 397 months. Id. Petitioner appealed and his conviction and sentence were upheld by the Second Circuit on April 29, 1996. Id. The United States Supreme Court denied certiorari on October 7, 1996. Pipola v. United States, 519 U.S. 869 (1996).

On August 26, 1997 Petitioner filed a habeas petition pursuant to 28 U.S.C. § 2255, seeking vacatur of his conviction and sentence on all counts of the indictment. The Petition asserted the following grounds for relief: 1) in failing to raise on appeal the Court's jury instruction on the first and third elements with respect to personal property and interstate commerce, appellate counsel's representation was unconstitutionally

P-049

ineffective; 2) the evidence was insufficient to support a conviction under the Hobbs Act because there was no proof of an interstate commerce nexus with regard to the robberies for which Petitioner was indicted; and 3) the absence of a proper Pinkerton charge and proof that Petitioner performed some act that directly facilitated or encouraged the use or carrying of a firearm rendered the jury instruction on violations of 18 U.S.C. § 924(c)(1) and aiding and abetting infirm. (Pet.'s Fed. R. Civ. P. 60(b) Mot. at 4.) The habeas petition was denied by this Court on October 19, 1999. Pipola v. United States, 1999 WL 993718 (E.D.N.Y. Oct. 19, 1999).

On October 26, 1999, Petitioner filed a motion for reconsideration of the Court's dismissal of his habeas petition, which Petitioner styled as a motion pursuant to Federal Rule of Civil Procedure 59(e) and which the Court construed as a motion for reconsideration under Eastern District of New York Local Civil Rule 6.3 ("first motion for reconsideration"). The first motion for reconsideration asserted the following claims: 1) the Court erroneously treated one of Petitioner's ineffective assistance of counsel claims — the failure of appellate counsel to raise Bailey v. United States, 516 U.S. 137 (1995) on direct appeal — as a challenge to the sufficiency of evidence; 2) the Court wrongly held that Petitioner had not met the standard for ineffective assistance of counsel set forth in Strickland v. Washington, 466 U.S. 668 (1984); 3) the Court ignored Petitioner's claim that the Court provided irrelevant and prejudicial testimony in response to jury requests for two read backs; 4) the Court improperly affirmed Petitioner's gun convictions on aiding and abetting theories of liability by misapplying

3

Bailey and finding that a Pinkerton charge was unnecessary; 5) the Court erred in finding that United States v. Gaudin, 515 U.S. 506 (1995), did not apply to Petitioner's case; 6) the Court improperly concluded that sufficient evidence was presented to prove that the case was one that involved interstate commerce; and 7) Apprendi v. New Jersey, 530 U.S. 466 (2000), is applicable to Petitioner's case because "elements involved in the imposition of section 924 were removed from the jury's determination." (Pet.'s Fed. R. Civ. P. 60(b) Mot. at 4–5.) The Court denied the first motion for reconsideration in a Memorandum and Order dated April 27, 2001 ("the 2001 Order"). Petitioner appealed this decision to the Second Circuit, which denied his appeal on March 4, 2002.

On February 26, 2003, Petitioner filed another motion for reconsideration ("second motion for reconsideration"), which is presently before the Court, seeking to have the Court consider the merits of his case for the fourth time. The second motion for reconsideration is brought pursuant to Federal Rule of Civil Procedure 60(b). The motion raises the following issues: 1) Gaudin, 515 U.S. 506, should have been applied to this case and would require a finding that the jury instructions utilized by the Court were unconstitutional because they removed the question of whether the commerce at issue in the case was interstate as opposed to intrastate;[1] 2) the Court erred in the 2001 Order by

---

[1] Petitioner has phrased the Gaudin argument in terms of whether the question of "the materiality of the interstate commerce connection" should have been submitted to the jury. However, the Court finds that the argument is more properly described in terms of the question of whether the element of interstate commerce (as opposed to the *materiality* of the interstate commerce) should have been submitted to the jury. It is not clear that "materiality of an interstate commerce connection" is a recognized legal concept, but the presence or absence of interstate commerce and the issue of whether there is a sufficient nexus with interstate commerce to establish federal jurisdiction are

4

failing to apply Gaudin, finding that a retroactivity analysis was required despite the fact that Gaudin was decided while Petitioner's case was on direct review; 3) appellate counsel was unconstitutionally ineffective for failing, on direct appeal, to raise the Gaudin issue; 4) appellate counsel was unconstitutionally ineffective for failing, on direct appeal, to raise a claim under Stirone v. United States, 361 U.S. 212 (1960); 5) appellate counsel failed, on direct appeal, to argue that the testimony of Steven Small (and other evidence presented at trial) was both factually and legally insufficient to support a second 924(c) conviction; and 6) the Court erroneously instructed the jury that the element of interstate commerce was satisfied.

As a threshold matter, the Court must address Respondent's contention that Petitioner's motion for reconsideration should be construed as a successive collateral attack because Petitioner's arguments allegedly address the integrity of the criminal trial rather than the integrity of the federal habeas proceeding. (Mem. Law Opp'n Mot. Relief at 4–7.) However, the Court finds that with respect to the Gaudin issue, Petitioner is clearly addressing an error made by this Court during the course of his habeas proceeding, Pipola, 1999 WL 993718, at *5, and thus a motion for reconsideration of the previous Order is the appropriate vehicle for his arguments. Because the claim relating to the Court's allegedly erroneous instruction is linked to the Gaudin issue, the Court will address that claim as well. With respect to the issue of Stirone, because Petitioner

---

well-recognized, and so the Court infers that these are the issues Petitioner is referencing.

raised Stirone in his original habeas petition and the Court made a finding regarding Petitioner's Stirone argument in its 2001 Order, id. at *5–6, the Court finds that the claim can be dealt with here rather than through a successive collateral attack, in the interests of efficiency and finality. However, with regards to ground five, regarding the second 924(c) conviction (the insufficiency of evidence and ineffective assistance counsel claims), the Court can find no antecedent to the claim in Petitioner's habeas petition and therefore cannot consider this claim in the context of a Rule 60(b) motion, as discussed below.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 60(b) provides that a court may relieve a party from final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).

## DISCUSSION

I.  **Grounds One, Two, Three, and Six**

In Ground Six, Petitioner appears to argue that the Court's instruction on the

6

P-049

interstate commerce element was erroneous even under the law that was applicable prior to Gaudin. Grounds One, Two, and Three address the contention that Gaudin, 515 U.S. 506, should have been applied to Petitioner's case, alleging that the Court should not have held that a retroactivity analysis was needed since Gaudin was decided while Petitioner's case was on direct review, that Gaudin should apply to Petitioner's case, and that appellate counsel should have asserted this argument on appeal. Petitioner's conviction did not become final until October 7, 1996, and Gaudin was decided on June 19, 1995. Petitioner is therefore correct that this Court erred in its previous Orders in finding that retroactivity analysis was required and in failing to apply Gaudin to Petitioner's case. However, for the reasons stated below, the Court finds that the Gaudin claim nevertheless must be denied, because it is procedurally barred.

i. *Ground Six*

Petitioner contends that this Court erroneously instructed the jury that the element of interstate commerce had been satisfied. As mentioned above, the Court did state, in the course of the jury instructions, "I instruct you that the objects or activity referred to in the indictment are interstate commerce." (Tr. 1147.) This instruction was given pursuant to prevailing law at the time of the trial, prior to the Gaudin decision, which held that courts could decide whether commerce was interstate as a matter of law, rather than submitting the question to the jury. United States v. Vasquez, 267 F.3d 79, 89 (2d Cir. 2001) (citing United States v. Calder, 641 F.2d 76, 78 (2d Cir. 1981); United States v. Augello, 451 F.2d 1167, 1170 (2d Cir. 1971)).

7

The Court's finding was based on testimony that either Caldwell or Dubovsky or both "did business in New Jersey [and] Connecticut, and these were the funds from that particular business, ergo, it could rationally be inferred that it was an [sic] interstate commerce." (Tr. 975; see also Tr. 800-813.) This finding was in accordance with well established law stating that "the burden of proving a nexus to interstate commerce is minimal," United States v. Elias, 285 F.3d 183, 188 (2d Cir. 2002), and that "[t]he jurisdictional requirement of the Hobbs Act may be satisfied by a showing of a very slight effect on interstate commerce." Id. (quoting United States v. Angelilli, 660 F.2d 23, 35 (2d Cir. 1981)). "Even a potential or subtle effect on commerce will suffice." Angelilli, 660 F.2d at 35.[2]

In short, there was no error in the Court's instruction under the law that applied

---

[2] Purely intrastate transportation of goods or financial instruments that are ultimately bound for destinations outside the state or are part of a continuous flow of interstate commerce has been found by other courts to constitute interstate commerce. E.g. Foxworthy v. Hiland Dairy Co., 997 F.2d 670, 672 (10th Cir.1993) ("Transportation within a single state may remain 'interstate' in character when it forms a part of a 'practical continuity of movement' across state lines from the point of origin to the point of destination."); Baez v. Wells Fargo Armored Service Corp., 938 F.2d 180, 182 (11th Cir.1991); McGee v. Corporate Express Delivery Systems, 2003 WL 22757757, *5 (N.D.Ill. Nov. 20, 2003) ("A driver does not have to cross state lines to engage in interstate commerce.").

The Court also finds that Petitioner's argument that the money was, in effect, the property of Anchor alone at the time that it was being transported, due to an alleged indemnification agreement with Dubovsky and Caldwell, cannot undermine the finding that the commerce was interstate. Petitioner has not cited any cases to indicate that parties can effectively defeat federal jurisdiction through private contractual arrangements in the form of indemnification agreements, nor has the Court been able to locate any such cases. That said, the Court cannot adopt Petitioner's argument that the indictment was rendered infirm due to the fact that the Anchor was named as the victim of the robbery, and therefore must have suffered a loss of its "personal property," yet the property was treated as belonging to Dubovsky and Caldwell for purposes of the interstate commerce nexus. Clearly, armored car companies or other entities that transport or protect others' financial assets are not left unprotected by laws against robbery simply because the property they are protecting is still technically the property of other individuals or entities. They can be the named victims of robberies.

8

prior to the Supreme Court's subsequent decision in Gaudin. The fact that the instruction was later called into question by Gaudin is a separate issue, which is discussed below.

### ii. *Grounds One, Two, and Three*

Gaudin was decided after the conclusion of Petitioner's trial but before Petitioner's direct appeal. The effect of Gaudin was to "[make] clear [that] even elements that include mixed questions of fact and law must be submitted to and decided by the jury." Vasquez, 267 F.3d at 89 (citing Gaudin, 515 U.S. at 512–13). Gaudin dealt with the element of materiality of false statements, but was subsequently applied to other elements such as the question of whether commerce was interstate. See id. (finding that after Gaudin, the question of whether commerce was interstate must be decided by the jury).

At trial, Petitioner's attorney claimed that counts two and four, which involved interstate commerce elements, were jurisdictionally defective because the money that was being carried by Anchor did not technically belong to Caldwell or Dubovsky — the only entities that were alleged to have engaged in interstate commerce — since they were reimbursed or indemnified by Anchor. (Tr. 975.) Counsel then made a related challenge to the jury instruction on the subject of interstate commerce, arguing that the jury could find that at the time that the money was stolen, it no longer belonged to Caldwell or Dubovsky, and that therefore there was no interference with interstate commerce. (Id. at 979–81.) Trial counsel then stated, however, that "I don't have a

9

problem if you want to say . . . that Dubovsky and Caldwell are an entity [sic] in interstate commerce." (Id. at 981.) He subsequently explained that he was arguing that "if the jury finds that this was not the property of Dubovsky and Caldwell, then . . . the government failed to prove that Anchor Armored was involved in interstate commerce." (Id. at 982.) Defense counsel characterized the different portions of the jury instruction as "inconsistent." (Id. at 980.)

It appears from this record that defense counsel was not necessarily challenging the Court's right to make a finding as a matter of law that the relevant commerce was interstate, but rather, was pointing out that there were two separate issues to be resolved: first, whether or not Dubovsky and Caldwell were entities engaged in interstate commerce, and second, whether the money that was stolen actually belonged to Dubovsky or Caldwell. Counsel apparently agreed that the Court had the right to decide the first issue as a matter of law. (Id. at 981.) Because the record is somewhat ambiguous, however, the Court will assume, *arguendo*, that counsel's objections were sufficient to preserve the claim that the jury must decide whether the commerce was interstate.

This claim was not, however, preserved on appeal. (See Pet.'s App. Br., 1995 WL 17202812.) Petitioner must therefore demonstrate "cause" and "prejudice" for the failure to raise the claims earlier. Bousley v. United States, 523 U.S. 614, 622–23 (1998). The only explanation Petitioner has offered for his failure to assert the claim on appeal is the allegation that his appellate counsel was ineffective in failing to raise this

10

issue. Since claims of ineffective assistance of counsel can be considered at this stage, Massaro v. United States, 538 U.S. 500, 504 (2003), the Court will consider whether counsel's failure to raise this claim constituted ineffective assistance.

In Strickland v. Washington, the Supreme Court established a two-part test to determine whether an attorney's performance was ineffective. First, a defendant or petitioner "must show that counsel's representation fell below an objective standard of reasonableness .... under prevailing professional norms." 466 U.S. 668, 688 (1984). Second, the defendant or petitioner must show that counsel's performance prejudiced his defense. Id. at 689. To show prejudice, there must be a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. Id. at 694.

The Court is unable to conclude that appellate counsel's performance was ineffective. "Appellate counsel need not raise every colorable claim in order to provide effective assistance of counsel," Simon v. Miller, 2002 WL 48805, *3 (S.D.N.Y. Jan. 14, 2002) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)), though "appellate counsel is considered ineffective when she omits 'significant and obvious issues.'" Id. (quoting Mayo v. Henderson, 13 F.3d 528, 532 (2d Cir.1994)). The Court finds that the import of Gaudin was not so clear or obvious such a short time after the decision was rendered[3] that appellate counsel can be said to have provided unreasonably deficient representation

---

[3.] Gaudin was decided on June 19, 1995 and Petitioner's appellate counsel filed his appellate brief on July 3, 1995.

11

in failing to raise the Gaudin issue.

First, though much of the language of Gaudin was general in tone, on its face Gaudin applied to a different element than that at issue here, *i.e.* materiality of alleged false statements rather than whether commerce is interstate or intrastate. The Supreme Court's analysis in Gaudin emphasized the fact that there was a substantial history and tradition of juries considering the question of materiality. 515 U.S. at 515–19 (reviewing the extent to which juries had historically decided the element of materiality, and noting that "it is precisely historical practice that we have relied on in concluding that the jury must find all the elements"). However, history and tradition were different with respect to the element of interstate commerce, which was almost never submitted to a jury. See United States v. Parker, 73 F.3d 48, 52 (5th Cir. 1996) (noting that "[i]n contrast [to the element of materiality considered in Gaudin], the effect on interstate commerce, although an element of the crime, is purely jurisdictional in nature, with no historical role whatsoever for the jury in determining the issue"). Therefore, although Gaudin was ultimately extended to the element of interstate commerce, it was not necessarily obvious that this extension would occur.

Second, it was not immediately apparent which instructions typically used by courts in jury instructions would pass muster and which would not. Uncertainties as to the precise implications of Gaudin were expressed by courts for a number of years, and different circuits disagreed as to its interpretation. See, e.g., United States v. Shinault, 147 F.3d 1266, 1277 (10th Cir. 1998) (noting that "[t]wo other circuits appear to have

12

held that the Gaudin rule is limited to cases in which the element at issue was not submitted [at all] to the jury," and declining to decide whether "the rule in Gaudin extends to a case in which the element *was* submitted but in such a way as to effectively dictate the jury's application of the law to the facts") (citing United States v. Castleberry, 116 F.3d 1384, 1389 (11th Cir. 1997); United States v. Parker, 104 F.3d 72, 73 (5th Cir. 1996). As discussed below, it appears even now that the language used by the Court in Petitioner's case may not actually have been in violation of Gaudin. For these reasons, the Court cannot find that appellate counsel's performance was unreasonably deficient.

Additionally, with respect to the prejudice prong of Strickland, the Court finds that it does not appear probable that the Second Circuit would have granted relief on appeal even if appellate counsel had raised the Gaudin issue, given that the Second Circuit denied relief in Vasquez, 267 F.3d 79, a very similar case. In Vasquez, a Gaudin issue was raised because the district court had informed the jury that "either heroin or cocaine trafficking *necessarily involves foreign commerce*, because the raw materials for these substances originate outside the United States." Vasquez, 267 F.3d at 88. The Second Circuit found that the charge was not in violation of Gaudin because the district court also stated that:

> [b]efore you can find the defendant guilty of each of these counts, *you must find* also that, at the time the alleged murder took place, there existed an enterprise engaged in racketeering activity . . . . This element has three parts: (1) The existence of the enterprise or group; (2) The enterprise's engagement in acts of racketeering; and (3) *The enterprise's effect on interstate commerce.*

13

and that:

> *if you find* that an enterprise was involved in a racketeering activity, and *that the enterprise had an effect, be it legal or illegal activity, on interstate and foreign commerce,* then you may find a racketeering enterprises [sic] existed.

Id. at 89. The Second Circuit held that despite the fact that the charges "removed from the jury at least a portion of the jurisdictional element," when considered in their entirety the instructions conveyed to the jury that they were to determine whether the interstate commerce element was satisfied. Id.

In the case at bar, the objectionable portion of the jury charges consisted of the following statements made by the Court: "[i]n this case there is no issue as to . . . what is considered interstate commerce"; "it is a question of law for me to decide whether an activity or business is considered interstate commerce"; and "I instruct you that the objects or activity referred to in the indictment are interstate commerce." (Tr. 1146–47.)

However, "[i]n evaluating a challenged jury instruction, [a court] must first 'focus on the specific language challenged, to determine whether it passes muster[;] [n]ext, [the court] must review the instructions as a whole to see if the entire charge delivered a correct interpretation of the law." Vasquez, 267 F.3d at 88 (quoting United States v. Coyne, 4 F.3d 100, 113 (2d Cir. 1993) (internal quotation marks and citations omitted)). Here, the charges read as a whole conveyed to the jury that they were to decide whether Petitioner's actions had an impact on interstate commerce. Apart from making the statements quoted above, the Court instructed the jury that:

14

> With respect to the third element — that interstate commerce, or an item moving in interstate commerce, was delayed, obstructed or affected in some way as a result of the defendant's actions — it is a *question of fact for you, the jury, to determine* in accordance with my instructions whether such a delay, obstruction or effect has occurred .... *Your main concern is with the second* [use of force or threat of force] and *third [interstate commerce] elements of the crime of obstructing interstate commerce by* robbery .... If you decide that the defendant obtained another's property against his will by the use of threat or force, violence or fear of injury, *you must then decide whether this action would affect interstate commerce* in any way or degree. *You must determine whether there is [an] actual or potential effect on commerce within one state that goes to any place outside that state.*
> If *you decide that there was any effect at all on interstate commerce*, then that is enough to satisfy this element. The effect can be minimal. For example, if a successful robbery of money would prevent the use of those funds to purchase articles which travel through interstate commerce, that would be [a] sufficient effect on interstate commerce.
> You do not have to decide whether the effect on interstate commerce was harmful or beneficial to a particular business, or to commerce in general. The government satisfies its burden of proving an effect on interstate commerce if it proves beyond a reasonable doubt any effect, whether it is harmful or not.
> The defendant need not have intended or anticipated an effect on interstate commerce. *You may find* the effect is a natural consequence of his actions. If *you find* that the defendant intended to take certain actions — that is, he did the acts charged in the indictment in order to obtain property — and *you find* those actions to have either caused [sic] or would probably cause an effect on interstate commerce, then *you may find* the requirements of this section have been satisfied.

(Tr. at 1147–50.)

As in Vasquez, 267 F.3d 79, a seemingly absolute statement, to the effect that the Court had decided the interstate commerce issue as a matter of law, was followed by detailed instructions to the jury informing them that they should decide whether interstate commerce was affected and explaining how they could make this finding (for

15

example, explaining that the effect could be minimal and that the effect did not have to be intentional). Therefore, this Court finds that, as in Vasquez, "[w]hen examined in its entirety, the jury charge stated several times that it was for the jury to find whether the interstate/foreign commerce element had been proven by the government." Vasquez, 267 F.3d at 88.

Because Petitioner cannot establish that his appellate counsel was ineffective according to the standards of Strickland, he has not demonstrated cause for failure to raise the claim on appeal, and therefore the claim must be denied as procedurally barred. Bousley, 523 U.S. at 622–23.

## II. Ground Four

Petitioner asserts that appellate counsel was ineffective in failing to make a constructive amendment of the indictment argument under Stirone, 361 U.S. 212, and that he should now be granted relief on this basis. The Court already considered Petitioner's Stirone argument in its Order denying Petitioner's habeas petition, finding that "[s]ince the indictment did not allege some other specific effect, the government remained free to prove that interstate commerce was affected by depletion of the assets of Caldwell and Dubovsky." Pipola, 1999 WL 993718, at *6. The Court distinguished a case such as Petitioner's, in which the possible bases for conviction are narrowed by the evidence presented at trial, rather than broadened, from cases such as Stirone, in which an indictment does allege a particular type of effect on interstate commerce and therefore that specific effect must be proven by the government. Id. at *6 n.4 (citing United States

16

P-049

v. Zingaro, 858 F.2d 94, 99 (2d Cir.1988)). The Court finds that Petitioner has presented no argument that would be sufficient to meet the standard of Federal Rule of Civil Procedure 60(b) and finds no basis at this point to reconsider its earlier findings. Additionally, as the Court found that there is no merit to Petitioner's Stirone claim, appellate counsel cannot be held ineffective for failing to raise the claim. "[F]ailure to assert a baseless claim does not fall below an objective standard of reasonableness nor prejudice the defendant." Sanchez v. United States, 2005 WL 1005159, *3 (S.D.N.Y. Apr. 30, 2005).

### III. Ground Five

Petitioner argues that the evidence presented at trial was factually and legally insufficient to convict Petitioner on both of the 924(c) counts. The Court can find no antecedent to this argument in Petitioner's original motion under § 2255, and therefore the Court cannot reach the claim in the context of a Rule 60(b) motion for reconsideration. Rule 60(b) is not designed to address "new claims never included in the initial petition"; rather, those claims are properly considered as successive habeas petitions. Jackson v. Walker, 1998 WL 813439, *5 (S.D.N.Y. Nov. 23, 1998). Petitioner retains the right to file a successive habeas petition asserting any grounds not addressed by the Court in this Order or its previous Orders.

The Court also notes, however, that the question of whether the evidence presented at trial was factually and legally sufficient to convict Petitioner on each of the 924(c) counts was already considered and decided by the Second Circuit. Pipola, 83

17

F.3d 556 (finding, for example, that "under 18 U.S.C. § 2 and § 924(c), all that is required to prove aiding and abetting is some act directly facilitating or encouraging the use or carrying of a firearm, as opposed to only having knowledge that a firearm will be used in the robbery. The evidence in the present case was sufficient for such purposes: Pipola designed the plans for *two robberies*") (emphasis added). A habeas court will not usually readjudicate claims previously raised and rejected on direct appeal. Reed v. Farley, 512 U.S. 339, 358 (1994) (Scalia, J., *concurring in part and concurring in the judgment*) ("[C]laims will ordinarily not be entertained under § 2255 that have already been rejected on direct review."); United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997) ("A § 2255 motion may not relitigate issues that were raised and considered on direct appeal.").

Petitioner seeks to avoid this procedural bar by suggesting that due to appellate counsel's allegedly ineffective representation on appeal, and this Court's subsequent reliance on the findings of the Second Circuit (which Petitioner contends were improper because of counsel's misrepresentations in oral argument), no court has *properly* considered the question of whether Petitioner encouraged others to carry firearms and/or supplied firearms.

Petitioner claims that "the government was allowed to tell the jury over and over, uncorrected, that Pipola supplied the gun; and, to compound the error, appellate counsel told the Second Circuit panel hearing the oral argument that Pipola supplied the gun."

18

P-049

(Pet. Repl. at 3.)[4] However, neither this Court nor the Second Circuit found that Petitioner supplied the gun for the robberies; rather, the finding was that Petitioner "*g[ave] Small* the task of supplying a gun." Pipola, 83 F.3d at 564 (emphasis added). The Second Circuit upheld his conviction on the basis of the finding that Petitioner encouraged others to carry guns, not based on a finding that Petitioner directly supplied guns. Therefore, even if appellate counsel overstated Petitioner's role in the offense, as Petitioner claims, it appears that the Second Circuit disregarded any claims by appellate counsel that Petitioner supplied guns. The Second Circuit also, of course, presumably reviewed the trial transcripts and was familiar with the evidence presented at trial, which supported the finding that Petitioner encouraged others to carry guns, not that Petitioner directly supplied guns.

Moreover, appellate counsel attempted to convince the Second Circuit that Petitioner had not even encouraged Small to supply the gun, stating:

> Small agreed to provide a gun, but there is simply no testimony in the record indicating that Pipola asked Small to provide a gun or that Pipola suggested Small provide a gun. Small himself may have suggested that he supply a gun. In short, the evidence adduced by the government was wholly insufficient to prove beyond a reasonable doubt that Pipola actively and directly encouraged Small or anyone else to supply firearms for use in the robberies.

---

[4.] Similarly, Petitioner asserts that "Mr. Pipola did *not* supply the gun that was used in the robberies, a theory the government has promoted and which *has been erroneously adopted by the courts*" (Fed. R. Civ. P. 60(b) Mot. at 11) (emphasis added) but does not identify any place in which this Court or the Second Circuit actually adopted the position that Petitioner supplied the gun. This Court, like the Second Circuit, has previously stated that the gun was found to have been supplied by Petitioner's co-conspirator Steven Small. Pipola, 1999 WL 993718 at *3.

19

P-049

(Pet. App. Br., 1995 WL 17202812, at 13.) Thus, the Court cannot find that appellate counsel committed any legal error or that the alleged errors prejudiced Petitioner, as required for a finding of ineffectiveness under Strickland. The Court therefore finds no basis to revisit the findings of the Second Circuit or its own previous decisions.

## CONCLUSION

For the reasons stated herein, Petitioner's motion for reconsideration pursuant to Federal Rule of Civil Procedure 60(b) is DENIED. The Clerk of Court is directed to enter a final judgment of dismissal and to close the case.

SO ORDERED.

Dated: May 31, 2005
       Brooklyn, NY

                                          s/SJ
                                        Senior U.S.D.J.

P-049